IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

JULIE ROSENBAUM
1911 W. Bender Rd.
Glendale, WI 53209

                      Plaintiff,

v.                                                                  Case No. 21-cv-847

ZORN COMPRESSOR & EQUIPMENT, INC.
1335 E Wisconsin Ave
Pewaukee, WI 53072-3717

                      Defendant.

# COMPLAINT

**NOW COMES** Plaintiff, Julie Rosenbaum, through her attorneys, OVB Law & Consulting, S.C., hereby alleges as follows:

## PARTIES

1. Plaintiff, Julie Rosenbaum, is citizen and resident of the United States and Milwaukee County, Wisconsin, and is 59 years old.

2. Defendant, Zorn Compressor & Equipment, Inc. is an employer which, upon information and belief, engages in an industry affecting commerce and employs more than 20 employees. Defendant is a Wisconsin corporation with a principal place of business located at 1335 E. Wisconsin Ave, Pewaukee, WI 53072-3717.

## JURISDICTION AND VENUE

3. This action arises under the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§ 621 et seq and under the Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101 et seq.

1

4. Jurisdiction over this claim is invoked pursuant to 28 U.S.C.A. § 1343(a)(4) and 29 U.S.C.A. §§ 216(b) and 626(c)(1).

5. Claims alleged against Defendant pursuant to the Age Discrimination in Employment Act and under the Americans with Disabilities Act were timely filed with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC has since issued Plaintiff a Notice of Right to Sue Letter. (Exhibit A).

6. This action properly lies in the Eastern District of Wisconsin, Milwaukee Division pursuant to 28 U.S.C.A. § 1391(b) because the claim arose in this judicial district and both parties reside/have their principal place of business within this judicial district.

## STATEMENT OF FACTS

7. Plaintiff was employed by Defendant from on or about June 11, 2008, until March 3, 2021, as a full-time employee at the Defendant's facility located at 1335 E. Wisconsin Avenue, Pewaukee, WI 53072 (the "Pewaukee Facility").

8. Plaintiff initially was employed in the "Shipping and Receiving" position for Defendant (the "Initial Position") but most recently was employed by Defendant as a "Parts Purchaser/Expeditor" immediately prior to her termination (the "Purchaser Position"), together (the "Positions").

9. In the Purchaser Position, Plaintiff was the main purchaser at the Defendant's Pewaukee Facility. Upon information and belief, only two other employees at Defendant's Pewaukee Facility had purchasing authorization: Mr. Tom Yankee and Mr. Mike Cowell.

10. During Plaintiff's employment with Defendant, which was well over 12 years, Plaintiff satisfactorily performed the duties of her job Positions and was qualified to perform the essential functions of the Positions, with or without reasonable accommodation.

2

11. On or about January 2020, Plaintiff injured her knee while moving a box on Defendant's warehouse floor during working hours.

12. Plaintiff notified her supervisor, Mr. Ramy Van Neck, a supervisory employee of Defendant's, of her knee injury by orally telling him about the injury the same day the injury occurred.

13. Plaintiff's knee injury became increasingly painful to the breaking point, May 2020, in which Plaintiff was unable to work without immense pain and required a cane to assist her in walking.

14. Plaintiff subsequently sought medical treatment and diagnosis for her knee injury. The initial diagnosis was "right knee pain, unspecified chronicity" and for such condition, Plaintiff was prescribed weekly physical therapy treatments.

15. Following the initial diagnosis of Plaintiff's knee injury, Plaintiff notified Defendant of her knee impairment and proscribed physical therapy treatments, for which she required time off work, by emailing her supervisor, Mr. Van Neck.

16. Plaintiff's knee injury, and associated pain and physical limitations, persisted from the date of injury through her termination, and still persists to this date.

17. Plaintiff's knee injury and pain substantially limits one or more of her major life activities as Plaintiff has extreme difficulty walking and is unable to stand or walk for long periods of time. In sum, Plaintiff's knee injury has substantially limited Plaintiff's ability to walk, stand, bend, lift items, cook meals, care for her elderly mother, and perform many other daily tasks.

18. In November 2020, Plaintiff suffered a fall which caused additional injury to her knee. The fall made it even more difficult for Plaintiff to walk and perform work tasks such as standing for extended periods of time and lifting heavy items.

19. Immediately after the fall, Plaintiff notified Defendant by emailing her supervisor, Mr. Van Neck, of the re-injury to her knee and her overall condition.
20. Defendant did not follow-up or inquire as to whether Plaintiff would need an accommodation for the injury.
21. Further, at no point during Plaintiff's employment with Defendant did Defendant provide a reasonable accommodation for Plaintiff's knee condition, nor did Defendant engage in an interactive process to determine a reasonable accommodation for Plaintiff.
22. Sometime near the end of the 2020 calendar year, Plaintiff was diagnosed with a life-threatening heart condition, pulmonary hypertension. Plaintiff's pulmonary hypertension condition causes Plaintiff to randomly lose consciousness, suffer mood swings, suffer fatigue, and experience labored breathing.
23. Plaintiff's heart condition substantially limits one or more of her major life activities as losing consciousness unexpectedly severely disrupts several life activities such as walking, driving, sleeping, breathing, and many other daily life activities which require a person to stay alert and conscious. Plaintiff's heart condition is prolonged, severe, and long-term.
24. Defendant became aware that Plaintiff experienced fatigue and loss of consciousness at work in February 2020 when Defendant complained to Plaintiff about her "falling asleep at her desk" and embarrassed Plaintiff by having a conversation with her about her "sleep issues" in front of coworkers.
25. At the time of this conversation, Defendant was aware that Plaintiff's drowsiness/lack of consciousness could be medically related. Defendant was further aware that if Plaintiff were having a medical issue, Defendant would legally need to provide her with an accommodation.

26. Subsequently, on or around February 21, 2020, Mr. Van Neck, acting on behalf of Defendant, spoke with Plaintiff in person regarding her "sleep issues." During this conversation Plaintiff informed Mr. Van Neck that she had a serious sleep issue which was in the process of being diagnosed by medical professionals.

27. Despite Plaintiff notifying Defendant of her disability, Defendant intentionally did not provide Plaintiff with paperwork which would have ascertained whether Plaintiff required an accommodation for her condition.

28. Instead, Defendant continued to punish Plaintiff for her condition, and the side effects she experienced at work due to her condition.

29. Then in January 2021 when Plaintiff received her diagnosis for her "sleep issues," Plaintiff informed Defendant that she had pulmonary hypertension which caused several symptoms, including unexpected loss of consciousness, mood swings, fatigue, and labored breathing.

30. Despite Defendant's knowledge of Plaintiff's disability and exact diagnosis, Defendant did not engage in an interactive process with Plaintiff to determine if she needed an accommodation, nor did Defendant provide Plaintiff a reasonable accommodation for her disability.

31. In fact, at no point during Plaintiff's employment did Defendant make any efforts to work with Plaintiff to provide any reasonable accommodations for Plaintiff's life-threatening heart condition, nor did Defendant provide a reasonable accommodation for Plaintiff. Rather, Defendant repeatedly berated and punished Plaintiff for what Defendant alleged was Plaintiff sleeping at work, but was in actuality, Plaintiff losing consciousness due to her disability.

32. Not long after informing Defendant of the Plaintiff's limitations due to her heart condition diagnosis and knee injury, Defendant terminated Plaintiff on or around March 3, 2021.

33. Defendant told Plaintiff that Plaintiff's termination was due merely to a restructuring of positions and oversight of the fact that Plaintiff's duties were already being performed by others. Defendant's termination reason is purely pretextual.

34. Upon information and belief, prior to Plaintiff's termination no other employees were performing the same job duties as Plaintiff.

35. Upon information and belief, following Plaintiff's termination, Plaintiff's job duties were given to Mr. Mike Cowell, a substantially younger individual with no heart conditions or knee injuries. Mr. Cowell had little to no experience performing Plaintiff's job duties and had been employed by Defendant for only about two and a half years.

36. Further, upon information and belief, no other employee at Defendant's Pewaukee Facility was terminated around the time of Plaintiff's termination due to "restructuring of positions."

37. Even if Defendant was truly just restructuring job positions and duties, then it still discriminated against Plaintiff in deciding to fire her over other employees, despite her seniority and experience. Rather than keeping Plaintiff (who had over 12 years of experience/seniority with Defendant) on in the position, Defendant chose to fire Plaintiff and instead keep the younger, healthier employee, Mr. Cowell (who in comparison only had about 2 ½ years of experience working for the Defendant).

38. Defendant deliberately chose to fire a disabled, elderly employee and to replace her with a substantially younger, healthier employee.

39. As a direct result of Defendant's treatment, Plaintiff has suffered back pay losses, emotional distress, mental anguish, physical pain and discomfort, and humiliation.

**FIRST CAUSE OF ACTION- Failure to Provide Reasonable Accommodation in Violation of the Americans with Disabilities Act for Plaintiff's Knee Injury**

Plaintiff incorporates and realleges paragraphs 1-39.

40. Plaintiff has several disabilities within the purposes of the Americans with Disabilities Act.

41. Plaintiff's persistent knee injury substantially limits several major life activities, including but not limited to, standing, walking, bending, and lifting items.

42. Additionally, Plaintiff is disabled due to her life-threatening heart condition, pulmonary hypertension, as her heart condition substantially limits several major life activities, including, but not limited to, walking, standing, driving, and sleeping.

43. Defendant, through its officials and managers, was aware of Plaintiff's disability due to her knee injury no later than May 2020.

44. Under the Americans with Disabilities Act of 1933, employers are required to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." 42 U.S.C.A. § 12112(b)(5).

45. Defendant neither engaged with Plaintiff at all regarding providing a reasonable accommodation, nor did Defendant ever provide Plaintiff with a reasonable accommodation for her knee condition. Even worse, Defendant was aware of its duty to provide reasonable accommodations in such circumstances, and yet, Defendant specifically chose not to provide an accommodation to Plaintiff, and even went so far as to avoid mentioning the possibility of accommodations to Plaintiff.

46. A reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position. . . or other similar accommodations." 42 U.S.C. § 12111(9)(B). Any of these reasonable accommodations could have aided the Plaintiff in being able to perform the essential functions of her job, yet Defendant provided none such reasonable accommodations.

47. Because Defendant failed to make any attempt to make a reasonable accommodation for Plaintiff's disability due to her knee injury, Defendant violated the Americans with Disabilities Act of 1990.

48. Defendant's actions of failing to provide a reasonable accommodation to Plaintiff were intentional.

49. Because of Defendant's failure to provide a reasonable accommodation for Plaintiff's disability, Plaintiff has suffered damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION- Failure to Provide Reasonable Accommodation in Violation of the Americans with Disabilities Act for Plaintiff's Heart Condition**

Plaintiff incorporates and realleges paragraphs 1-49.

50. Defendant, through its officials and managers, was aware of Plaintiff's disability due to her pulmonary hypertension condition no later than January 2021.

51. Defendant neither engaged with Plaintiff at all regarding providing a reasonable accommodation, nor did Defendant ever provide Plaintiff with any reasonable accommodations for her heart condition.

52. Under the Americans with Disabilities Act of 1933, employers are required to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." 42 U.S.C.A. § 12112(b)(5).

53. A reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position. . . or other similar accommodations." 42 U.S.C. § 12111(9)(B). Any of these reasonable accommodations could have aided Plaintiff in being able to perform the essential functions of her job, yet Defendant provided none such reasonable accommodations.

54. Because Defendant failed to make any attempt to make a reasonable accommodation for Plaintiff's disability due to her heart condition, Defendant violated the Americans with Disabilities Act of 1990.

55. Because of Defendant's failure to provide a reasonable accommodation for Plaintiff's disability, Plaintiff has suffered damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION- Discrimination in violation of the Americans with Disabilities Act**

Plaintiff incorporates and realleges paragraphs 1-55.

56. Under the Americans with Disabilities Act of 1990, it is unlawful for an employer to "discriminate against a qualified individuals on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a).

57. In the twelve plus years that Plaintiff worked for Defendant, Plaintiff consistently sufficiently performed the duties of the Position and prior to Plaintiff's disabilities.

58. After Plaintiff began exhibiting symptoms of her disabilities at work, Plaintiff was written up and complained to several times for "falling asleep at work."

59. Even after Defendant became aware that Plaintiff's fatigue and drowsiness at work was medically related, Defendant's representatives and managers continued to reprimand and punish Plaintiff.

60. Defendant's actions amount to unlawful discrimination against Plaintiff because Defendant took discriminatory actions against Plaintiff on the basis of Plaintiff's disabilities, including humiliating her in front of coworkers and disciplining her because of the symptoms associated with Plaintiff's disabilities.

61. Further, Defendant additionally discriminated against Plaintiff on the basis of her disabilities, by terminating Plaintiff.

62. Plaintiff's disabilities and impairments were a motivating factor in Defendant's decision to terminate Plaintiff's employment.

63. By terminating Plaintiff because of her disabilities, Defendant has violated the Americans with Disabilities Act of 1990.

64. Plaintiff has suffered damages as a result of Defendant's unlawful actions in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION- Unlawful termination in violation of the Age Discrimination in Employment Act

Plaintiff incorporates and realleges paragraphs 1-39.

65. Under the Age Discrimination in Employment Act of 1967, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1).

66. Plaintiff is a member of a class protected by the Age Discrimination in Employment Act of 1967 because she is older than 40 years of age.

67. Defendant deliberately chose to terminate Plaintiff over a substantially younger, "healthier" employee.

68. Defendant then went on to replace Plaintiff with that same substantially younger, "healthier" employee.

69. Plaintiff's age was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

70. Because Defendant discharged Plaintiff because of her age, Defendant has violated the Age Discrimination in Employment Act.

71. Plaintiff has suffered damages as a result of Defendant's unlawful actions in an amount to be determined at trial.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

1. Declaration that Defendant's conduct violated Plaintiff's rights,

2. Restore Plaintiff to her rightful position in the Parts Purchaser/Expeditor Position with Defendant, or in lieu of reinstatement, order front salary and benefits for the period remaining until normal retirement,

3. Award Plaintiff back pay salary and fringe benefits up to the date of reinstatement or front salary and benefits accrual and prejudgment interest,

4. Award Plaintiff liquidated damages in an amount double the back salary and fringe benefits award,

5. Award Plaintiff compensatory damages for loss of future earnings, loss of benefits, and mental or emotional distress, as a result of the following damages suffered:

6. Award Plaintiff punitive damages against Defendant,

7. Award Plaintiff costs and attorneys' fees, and

8. Grant such other relief as it may deem just and proper.

Plaintiff demands trial by a jury of twelve of her peers.

Dated this 15th day of July 2021.

**OVB Law & Consulting, S.C.**
Attorneys for Plaintiff

*s/Megan Mirka*
Megan Mirak
State Bar No. 1116377
*s/O. Emil Ovbiagele*
O. Emil Ovbiagele
State Bar No. 1089766

839 N Jefferson Street, Ste 502
Milwaukee, WI 53202
(414) 585-0588 (office)
(414) 255-3031 (fax)
megan@ovblaw.com
emil@ovblaw.com