UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JULIE ROSENBAUM,

                Plaintiff,

                                        Case No. 21-cv-847-pp

    v.

ZORN COMPRESSOR & EQUIPMENT, INC.,

                Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION
FOR REVIEW OF CLERK'S TAXATION OF COSTS (DKT. NO. 64)**

---

      In March 2025, the court granted summary judgment in favor of the

defendant on the plaintiff's claims (two under the Americans with Disabilities

Act (ADA) and one under the Age Discrimination in Employment Act (ADEA))

and dismissed the case with prejudice. Dkt. No. 46.

      Approximately two weeks later, on March 24, 2025, the defendant filed

its bill of costs and supporting documentation, seeking a total of $12,358.35.

Dkt. No. 49. On April 8, 2025, the plaintiff filed an objection, dkt. no. 52, and a

declaration from the plaintiff verified under 28 U.S.C. §1746, dkt. no. 53. The

defendant responded on April 22, 2025,[1] dkt. no. 55, and on April 24, 2025,

---

[1] On May 25, 2025, the Clerk of Court issued a briefing letter. Dkt. No. 50. The
clerk set a deadline of April 8, 2025 for objections to the defendant's proposed
bill of costs, a deadline of April 15, 2025 for the defendant's response and a
deadline of April 22, 2205 for the opposing party's reply. Id. The court received
the defendant's response in opposition to the plaintiff's objection one week after
the deadline for filing responsive materials in support of the bill of costs. Dkt.

1

the plaintiff filed a reply (which she called a "response to the defendant's reply brief"), dkt. no. 58.

On June 23, 2025, the clerk issued a taxation of costs against the plaintiff in the amount requested by the defendant—$12,358.35—and instructed that within seven days from the taxation order, a party could seek court review of the decision under Federal Rule of Civil Procedure 54(d). Dkt. No. 63. Three days later, on June 26, 2025, the plaintiff filed a motion for court review, dkt. no. 64, a supporting brief, dkt. no. 65, and an additional declaration from the plaintiff verified under 28 U.S.C. §1746, dkt. no. 66.[2] The defendant responded on July 23, 2025. Dkt. No. 69. The plaintiff did not file a reply brief.

The plaintiff argues (1) that under Rivera v. City of Chicago, 469 F.3d 631 (7th Cir. 2006), her indigency or inability to pay the proposed costs should lead the court to exercise its discretion and excuse her from paying the defendant's court costs, dkt. no. 65 at 2-5; and (2) that the defendant's proposed exemplification costs of $5,855 are insufficiently articulated for the court to conclude that the costs were reasonably necessary to the case, id. at

---

55. Three days later, the defendant filed an expedited motion to consider its response timely filed, dkt. no. 59; the court granted that motion. Dkt. No. 62.

[2] The plaintiff's brief in support of her motion, dkt. no. 65, mirrors her April 8, 2025 objection to the bill of costs, dkt. no. 52. The two documents appear to be almost identical, save the captions, font and two additional paragraphs regarding the plaintiff's indigency argument that appear on pages 5-6 of Dkt. No. 65. The plaintiff's two declarations (Dkt. Nos. 53 and 66) also are nearly identical, with the only significant difference being the addition of ¶8 in Dkt. No. 66, concerning the plaintiff's worker's compensation award.

2

8-9. The court will deny the plaintiff's motion for review to the extent that she asserts indigency as a reason to excuse the court costs altogether, but will grant the plaintiff's motion to the extent that it objects to the defendant's exemplification costs under 28 U.S.C. §1920(4). The court will subtract $5,855 from the clerk's bill of costs, leaving a total bill of costs of $6,503.35.

## I.    Motion to Review the Clerk's Taxation of Costs (Dkt. No. 64)

### A.    Legal Standard

Federal Rule of Civil Procedure 54(d) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Allowable "costs," as referenced in Rule 54(d), are defined by 28 U.S.C. §1920 and include:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. §1920. See also Crawford Fitting Co v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987) ("28 U.S.C. § 1920 now embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the

losing party[.]"). Absent express statutory authority otherwise, "courts may not award litigation expenses that are not specified in §§ 1821 and 1920."[3] Rimini Street, Inc. v. Oracle USA, Inc., 586 U.S. 334, 339 (2019).

"The general presumption . . . is that in all proceedings and for all litigants, the prevailing party will recover costs." Ebrahimi v. Siddiqui, 113 F.4th 762, 766 (7th Cir. 2024). The general presumption is "difficult to overcome," and "the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." Richardson v. Chi. Transit Auth., 926 F.3d 881, 893 (7th Cir. 2019)). The court "'must award costs unless it states good reasons for denying them.'" Ebrahimi, 113 F.4th at 766 (quoting Weeks v. Samsung Heavy Indus. Co. Ltd., 126 F.3d 926, 945 (7th Cir. 1997)). "'Generally, only misconduct by the prevailing party worthy of a penalty or the losing party's inability to pay will suffice to justify denying costs.'" Lange v. City of Oconto, 28 F.4th 825, 845 (7th Cir. 2022) (quoting Weeks, 926 F.3d at 945).

B.    Analysis

1.    *Indigence*

"'The indigence exception under Rule 54(d)(1) is a narrow one,' and its application is committed to the district court's discretion." Lange, 28 F.4th at 846 (quoting Rivera, 469 F.3d at 636). The Seventh Circuit has explained that, in exercising discretion, a district court "must make a threshold factual finding that the losing party is 'incapable of paying the court-imposed costs at this

---

[3] 28 U.S.C. §1821 is the "Per diem and mileage generally; subsistence" statute and is not relevant here.

time or in the future.'" Rivera, 469 at 635 (quoting McGill v. Faulkner, 18 F.3d 456, 460 (7th Cir. 1994)). "The burden is on the losing party to provide the district court with 'sufficient documentation to support such a finding.'" Id. (quoting Chapman v. Al Transp., 229 F.3d 1012, 1039 (11th Cir. 2000)). The sufficient documentation "should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses." Id. Requiring "sufficient documentation" ensures that a district court will have "clear proof" of the party's financial circumstances and will "limit any incentive for litigants of modest means to portray themselves as indigent." Id.

If the district court satisfies itself that a party is indigent, the second step advises the district court to "consider the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case[.]" Rivera, 469 F.3d at 635. "No one factor is determinative, but the district court should provide an explanation for its decision to award or deny costs." Id. at 635-36. If a court concludes from the submitted documentation that a litigant has failed to carry the burden of showing that he or she is incapable of paying costs, the court need not proceed to the second step of the analysis. See Ebraimi, 113 F.4th at 767 (affirming award of costs after observing the district court conducted only the first step and "went no further because it concluded that [the plaintiff] had not shown that he was incapable of paying costs.")

5

a.    Plaintiff's Argument

Although the plaintiff acknowledges the general presumption in favor of awarding costs to the prevailing party, she asserts that she has submitted "detailed evidence of financial hardship" that shows that she is "functionally destitute." Dkt. No. 65 at 5. In her brief, she contends that she has "no employment income, no savings or assets, and relies entirely on limited monthly $1,882.70 Social Security disability payments to cover rent, utilities, food, and basic medical needs." Id. She admits that she previously had received "a one-time lump-sum worker's compensation award," but asserts that that amount "was used to pay off existing medical bills, not to accumulate wealth or discretionary savings." Id. She alleges that four years after her last work for the defendant, her condition "has significantly deteriorated, leaving her unable to work[.]" Id.

To support these propositions, the plaintiff filed two declarations, verified under 28 U.S.C. §1746—one dated April 8, 2025 and submitted with her objection to the bill of costs (Dkt. No. 53) and one dated June 26, 2025, submitted in support of her motion for review of taxation of costs (Dkt. No. 66). The declarations track the arguments in the plaintiff's brief.

b.    Defendant's Response

The defendant argues that the plaintiff's declarations lack any supporting financial documentation to bolster her claim of indigency and lack supporting medical documentation to corroborate her claim that her medical conditions render her incapable of securing any employment now or in the

6

future. Dkt. No. 69 at 2. The defendant cites <u>Liebhart v. SPX Corp.,</u> Case No. 16-cv-700, Case No. 16-CV-700, 2020 WL 6559201 (W.D. Wis. Nov. 9, 2020), where the court overruled an objection to the taxation of costs after observing that that plaintiff's conclusory declaration was unsupported by any underlying financial records. <u>Id.</u> at 3-4, fn. 1. The defendant cites <u>Bell v. Columbia St. Mary's Inc.</u>, Case No. 07-CV-81, 2009 WL 959637 (E.D. Wis. Apr. 8, 2009), for the proposition that the district court may require more than a plaintiff's conclusory assertions to demonstrate that she is incapable of ever paying costs. <u>Id.</u> at 4, n.2.

Next, the defendant contends that the assertions in the plaintiff's declaration appear to be contradicted by certain facts submitted in support of summary judgment that the plaintiff did not dispute:

> 145. Since [the plaintiff's] employment with [the defendant] ended on March 3, 2021, she has not sought any replacement employment and has not applied for any jobs; instead made a personal decision not to look for work.
>
> *   *   *   *
>
> 149. After her employment separation with [the defendant], [the plaintiff] applied for unemployment benefits; however she stopped applying for benefits when the State of Wisconsin re-implemented its requirement that employees conduct a work search in order to receive benefits.

Dkt No. 69 at 4-5 (quoting Dkt. No. 39, ¶¶145, 149).

The defendant also emphasizes the plaintiff's approximately $33,000 worker's compensation award awarded in February 2025 (Dkt. No. 57-1) and argues that the text of the order in that case belies the plaintiff's declaration that she used "'any payment awarded under that determination . . . exclusively

7

to cover medical expenses[.]'" Id. at 5 (quoting Dkt. No. 66 at ¶ 8). The defendant argues again that the plaintiff has not provided documentation showing her medical expenses from her knee injury. Id. at 6. The defendant argues that without such a showing, the plaintiff has not carried her burden of proving that she is both presently indigent and unable to pay costs in the future. Id. at 6-7 (citing Rivera, 469 F.3d at 636 and McGill, 18 F.3d at 460 (imposing costs against a plaintiff-inmate who claimed indigence)).

Finally, the defendant argues that even if the plaintiff could show indigence, the lawsuit did not involve any close or complex issues; the defendant argues that if court credits the plaintiff's assertion that she has been unable to work since her termination in March of 2021, she was both (a) never a "qualified individual with a disability" entitled to seek relief under the ADA in the first instance; and (b) not eligible for reinstatement as sought in her original complaint. Id. at 7-8 (citing Dkt. No. 1).

c.     Discussion

The court cannot conclude that the plaintiff has carried her burden of proving indigence. The plaintiff relies primarily on Rivera, in which the Seventh Circuit considered whether to abolish the indigency exception to Rule 54(d). Rivera, 469 F.3d at 636. Although it declined to do so, the Seventh Circuit nevertheless re-emphasized that the exception was a "narrow one" and that the burden rested with the non-prevailing party to overcome the presumption. Id.

On its facts, Rivera does not assist the plaintiff. In Rivera, the plaintiff submitted an affidavit averring that (a) she was a single mother of four working

8

full-time earning a salary of $1,800 per month; (b) she owned no real estate, stocks or bonds, vehicles or savings accounts, and received no child support; and (c) she had "a checking account with a nominal balance and she receive[d] food stamps." Id. at 637. The Seventh Circuit found that the district court had abused its discretion in denying costs to the City of Chicago. Id. The court scrutinized the plaintiff's indigency affidavit and concluded that the plaintiff "did not provide the district court with a schedule of expenses and did not identify any basis for a finding that she will be incapable of paying the City's costs at some point in the future[.]" Id.

The plaintiff here submitted a declaration, as Rivera contemplates. But the Seventh Circuit has never held that the submission of an affidavit, by itself, is sufficient to prove a plaintiff's indigence. See Richardson, 926 F.3d at 893 (finding indigence "is not a blanket excuse for paying costs"). The cases that address the indigency exception emphasize that the district court must satisfy itself—using whatever documentation a non-prevailing party submits—that the party is truly indigent:

> Ebraimi, 113 F.4th at 765 (affirming district court's award of $5,243.45 in costs to defendant against a prisoner-plaintiff serving a life sentence despite the prisoner-plaintiff submitting an affidavit claiming to be indigent);
>
> Liebhart, 2020 WL 6559201, at *3-4 (approving costs in excess of $43,000 despite the plaintiffs' affidavit averring that they had "negative net worth," in part because the plaintiffs provided no underlying financial records to support the statement);
>
> Acre v. Chi. Transit Auth., 738 F. App'x 355, 360 (7th Cir. 2018) (upholding district court award of $9,964.75 in costs, despite plaintiff's affidavit showing that he was "in debt and underwater"); and

9

McGill, 18 F.3d at 458, 459 (affirming the district court's award of over $3,200 in costs against a prisoner-plaintiff, noting that the plaintiff had made a bare statement—without supporting documentation—that he was indigent, incarceration and would be unable to pay costs).

The plaintiff here has cited only one case from this circuit in which a district court entirely excused costs on the basis of a plaintiff's indigence. See Cotton v. Milwaukee Area Technical College Dist. Bd. of Dir., Case No. 16-cv-1202, 2018 WL 11239432 (E.D. Wis. Aug. 14, 2018). In Cotton, after granting the defendant's motion for summary judgment, the court declined to award $1,745.25 in costs. Id. at *1. The court relied significantly on the fact that the plaintiff's attorney had withdrawn from the case because of a conflict just two months before the summary judgment deadline, leaving the plaintiff to fend for herself. Id. at *2 ("[t]his is a case in which the potentially precarious financial position of [the plaintiff] . . . and the lamentable circumstances of her counsel's withdrawal tilt the scale in favor of denying an award of costs.").

Here, the plaintiff remains represented by counsel, as she was throughout the case and the summary judgment briefing. The facts of this case are more akin to the facts in Rivera and Bell v. Columbia St. Mary's, Case No. 07-CV-81, 2009 WL 959637 (E.D. Wis. Apr. 8, 2009). In Bell, the court dismissed the plaintiff's claim on summary judgment, and the defendant sought approximately $3,600 in costs. Id. at *1. The Bell plaintiff objected on indigence grounds and filed a detailed affidavit stating that she was a sixty-five-year old woman and her only income was $914 monthly of Social Security Disability Income and that her monthly expenses were approximately

10

$1,711.00 (providing the precise dollar amounts that she received in food stamps and that she owed on her outstanding bills). See Case No. 07-cv-81, Dkt. No. 130-1. As part of her affidavit, the Bell plaintiff attached a document from the Social Security Administration showing her monthly income, id. at 3; a document from the city of Milwaukee showing her monthly rent, id. at 4; a document showing the amount owed on her car payment, id. at 5; a document showing her car insurance payments, id. at 6; a document showing her WeEnergies bill, id. at 7; a document showing her cable bill, id. at 10; a document showing amounts owed to the IRS, id. at 11; and a document reflecting a Milwaukee County circuit court judgment against her, id. at 15. Even though the plaintiff provided this detailed information, the court concluded that the plaintiff had not met her threshold showing of indigence, finding that she had not supported her assertion that she never would be able to work again with any evidence. Id. at *2.

Here, the plaintiff's declarations contain the following attestations:

- That the plaintiff is fifty-six years old and is "currently unable to work due chronic health conditions, including severe arthritis, debilitating knee and joint pain, and polycythemia, and pulmonary and essential hypertension." Dkt. No. 66, at ¶2, Dkt. No. 53 at ¶2

- That she has been deemed disabled and receives Social Security disability payments in the amount of $1,882.70 every month. Dkt. No. 66 at ¶4, Dtk. No. 53 at ¶ 2 (stating $1,800 per month).

- That her monthly rent is $300. Dkt. No. 66 at ¶6a, Dkt. No. 53 at ¶6a.

- That she pays $300 a month toward a $2,000 total credit card debt. Dkt No. 66 at ¶6b, Dkt. No. 53 at ¶6b.

11

- That her essential living expenses (gas, utilities, food, medical supplies, and other basic necessities) are approximately $1,400 per month. Dkt. No. 66 at ¶6c, Dkt. No. 53 at ¶6c.

- That she does not own a home or a vehicle, and that she has "no savings or investments[.]" Dkt. No. 66 at ¶7, Dkt. No. 53 at ¶7.

- That "[d]ue to [her] chronic pain, [she] ha[s] been unable to work since [her] termination by the Defendant in March 2021." Id. at 10. Dkt. No. 66 at ¶10, Dkt. No. 53 at ¶9.

- That her health conditions and pain make it "extremely unlikely that [she] will be able to improve [her] financial situation in the future." Dkt. No. 66 at ¶11, Dkt. No. 53 at ¶10.

- That she is unable to pay additional costs or fees related to the case. Dkt. No. 66 at ¶12, Dkt. No. 53 at ¶11.

Unlike the plaintiff in Bell, the plaintiff in this case has not provided a detailed expense schedule. Unlike the plaintiff in Bell, she has not attached any corroborating documents—no bank records, rent statements, Social Security documents, utility bills, credit card statements or doctor's notes corroborating any of her assertions. The plaintiff relies on repeated, conclusory assertions that she currently is unable to work (and has been unable to work since March 3, 2021) and cannot pay any court costs.

This lack of corroborating documentation is concerning, especially given the plaintiff's admissions at summary judgment. As the defendant argues, the plaintiff did not contest the fact that she (a) had not sought employment since March 3, 2021, had not applied for any jobs and had made a personal decision not to work (Dkt. No. 39 at ¶145); and (b) had stopped applying for unemployment benefits once the State of Wisconsin re-implemented its requirement that employees conduct a work search in order to receive benefits.

12

(Dkt. No. at ¶149). As the court observed in its summary judgment order, the plaintiff did not produce any evidence that her knee injury precluded her from working; as the court recounted, her knee doctor found that the plaintiff's knee conditions would impose "no formal restrictions" on her ability to work:

> When asked whether there were any limitations for an individual with the patient's injury, [Dr.] Wichman testified:
>
>> I mean, besides pain, nothing. There's no activity restrictions I would have for this patient. Surgically we attempted to inject some tissues, some – it's caked demineralized bone matrix – into the – that area to stimulate some healing response, and – and revascularize the bone there, but I wouldn't – besides the perioperative period, I wouldn't have any formal restrictions on that patient.
>
> Dkt. No. 33-39, Tr. p. 45, lines 11-23.

Dkt. No. 46 at 23. Although the plaintiff's declaration avers that her condition has "deteriorated" since 2021, she did not provide evidence to corroborate that statement. Nor does she attest that she has attempted to seek work at any time since 2021.

Also of concern is the lone significant difference between the plaintiff's April 8, 2025 declaration (Dkt. No. 53) and her June 26, 2025 declaration (Dkt. No. 66). The June 26, 2025 declaration avers that on February 3, 2025, an administrative law judge issued a final determination letter that resulted in an award which she used to cover her medical expenses. Compare Dkt. No. 66, ¶8 with Dkt. No. 53; see Dkt. No. 57-1 (Order for award in worker's compensation claim, awarding over $33,000 to the plaintiff).

The plaintiff's April 8, 2025 declaration in support of her objection to the defendant's bill of costs did not mention the worker's compensation award,

despite the fact that the administrative law judge had ordered the award three months earlier. See Dkt. No. 53. In response to the plaintiff's objection to the proposed bill of costs, the *defendant* submitted an affidavit from its vice president, attesting that on February 3, 2025, an administrative law judge had rendered a "Final Determination" in the plaintiff's worker's compensation claim and awarded the plaintiff $25,774 plus an additional $7,500 "for the benefit and convenience of the applicant." Dkt. No. 57-1 at 2. The defendant's vice president attested that the award had been paid, as ordered, by February 24, 2025. Dkt. No. 57 at ¶6. In her reply brief in support of her objection to the proposed bill of costs (Dkt. No. 58), the plaintiff did not mention the $33,000+ worker's compensation award, arguing only that under Rivera, she was not required to provide evidence beyond an affidavit. Id.

It was not until her June 26, 2025 declaration that the plaintiff mentioned the worker's compensation claim. Dkt. No. 66. In the June 2025 affidavit, she averred that

> [o]n or about February 3, 2025, Administrative Law Judge Amanda P. Luedtke issued a Final Determination Letter and Order regarding my worker's compensation claim, WC Claim No. 2024-007860. Any payment awarded under that determination was used exclusively to cover medical expenses related to my knee injury sustained while employed by the Defendant. I have not received any excess compensation or personal financial benefit from that award.

Id. at ¶8. The declaration does not specify the amount of the award (over $33,000), nor does it provide details about the medical expenses she says she used the award to cover (when they were incurred, when they were paid or to whom they were paid). Neither the plaintiff's April 8, 2025 affidavit (Dkt. No.

14

53) nor her June 26, 2025 affidavit (Dkt. No. 66) list medical debts in any amount (although there is reference to credit card debt), yet the June 2025 affidavit avers that the plaintiff used the entire $33,000+ amount awarded in late February 2025 in the intervening four months, and that she used it all on unspecified medical expenses. The plaintiff does not explain why the entire amount was used "exclusively to cover medical expenses" (Dkt. No. 66 at ¶8) when the administrative law judge's Final Determination and Order specifically broke out $7,500 for the plaintiff's "benefit and convenience." Dkt. No. 57-1 at 2.

Had she chosen to file a reply brief in support of her motion for costs, the plaintiff could have provided information and evidence addressing these issues,. She did not file a reply. She did not file a supplemental declaration with attached documentation. And even if the plaintiff had submitted evidence proving that she spent all the $33,000+ of the worker's compensation on medical debt, she has presented no evidence supporting her assertion that she is unable to perform even sedentary work and will not be able to do so in the future, or that she has tried unsuccessfully to find work since her termination.

The plaintiff's declaration does not constitute the "sufficient documentation" necessary to meet <u>Rivera</u>'s threshold ability-to-pay inquiry. The court will not excuse the entire bill of costs.

Because the court has concluded that the plaintiff has not met her burden on indigence, the court need not address the second step of the inquiry. <u>Ebraimi</u>, 113 F.4th at 767. Had the court reached that step, it still

would have imposed costs. The plaintiff's case was neither particularly close nor especially complex. As the court stated in the summary judgment order, although the parties spent much of their summary judgment briefing on the plaintiff's alleged sleep apnea, the words "sleep apnea" never appeared in the amended complaint as part of the plaintiff's failure-to-accommodate claim. Dkt. No. 46 at 19. Despite alleging that the defendant had failed to accommodate the plaintiff's pulmonary hypertension, the plaintiff did not respond to the defendant's arguments concerning her pulmonary hypertension. Id. As explained above, the plaintiff's knee doctor testified that he would not impose "any formal restrictions" on a patient with the plaintiff's knee injury. Id. at 23. Nor did the plaintiff identify a reasonable accommodation for her knee injury that she requested but did not receive. Id. at 24. As for her age discrimination claim, the plaintiff did not dispute that she was slow in expediting parts or providing updates to the service department. Id. This was not a case involving debatable questions of law or which required intensive parsing of the record; the court reached its result, in great part, by relying on facts uncontested by the plaintiff.

2. *Exemplification Costs*

The plaintiff also challenges the defendant's exemplification costs.

Included in the defendant's proposed bill of costs is $5,904 in "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" Dkt. No. 49 at 3. That cost is broken down into (1) a $49 charge for an electronic file from the Social

16

Security Administration (to which the plaintiff does not object) and (2)

"[p]ayment for e-Discovery costs associated with document production served

by Plaintiff (selected highlighted entries only)[.]" Id. at 4. Costs for subcategory

(2) total $5,855. Id. The defendant's accompanying declaration lists

subcategory (2) as "costs for creating and labeling images and preparing native

files of electronic records ('ESI') for production in response to requests for

production served by Plaintiff." Dkt. No. 48 at 2, ¶ 7.

In support of the declaration, the defendant attached invoices from its e-

discovery vendor, Digital Intelligence, which total $17,100. Dkt. No. 48-3. From

these invoices, the plaintiff selected eleven entries to submit for its costs; these

selections total $5,855. Id. Those eleven entries are as follows:

| | | |
|---|---|---|
| 12/02/2021 | Item 0A-01 (Julie Rosenbaum Desktop, 256 GB): Create forensic image; verify image. | $ 300.00 |
| 12/02/2021 | Item 0A-01 (Juile Rosenbaum Desktop): Perform hash and signature analysis & recover deleted files and folders for the purposes of user file & email identification. | $ 300.00 |
| 12/02/2021 | Item 0A-01 (Juile Rosenbaum Desktop): Identify email and export to "0A-01 (Juile Rosenbaum Desktop).L01", (4.80 GB); verify image. | $ 630.00 |
| 12/09/2021 | Re-OCR ZZ-01 items that failed during initial OCR process; identify 0A-01 and ZZ-01 unique top level emails within 1/1/18 - 5/31/21 date range and tag families; create complete searchable index of 0A-01 and ZZ-01 emails + families within 1/1/18 - 5/31/21 date range (43.35 GB ingested volume). | $ 1,100.00 |
| 12/13/2021 | Create forensic image of ZZ-01 Office 365 email; verify image; perform searches across 0A-01 email and ZZ-01 email to identify emails from Rosenbaum to the 6 other custodians and emails from the 6 other custodians to Rosenbaum; evaluate results. | $ 120.00 |

17

| 12/15/2021 | Perform searches across 0A-01 (Rosenbaum desktop email) and ZZ-01 (Office 365 email) deduplicated and date filtered data to identify emails From/To Rosenbaum and the 6 other custodians; tag hits + families; evaluate file types of direct hits and exclude immaterial images/company logos, immaterial HTML and plain text email signatures, immaterial XML formatting files, empty/zero byte files, and immaterial font file; evaluate file types of non-direct hit family items; export "20211215_0A-01 & ZZ-01_Rosenbaum & Other Custodians Comms_3621" load file (6,597 files; 1.39 GB); create Relativity workspace and create user credentials for Attorney Sally Piefer; edit and QC load file; import data to Relativity; propagate parent email sent date to families; for emails, convert date/time displayed in viewer to match metadata; tag all files to Central time zone for imaging purposes; build dtSearch; create color and black & white imaging profiles; create search term report containing custodian email addresses and first name last name proximity searches; perform searches; create persistent highlight set. | $ 1,290.00 |
|---|---|---|

| 12/27/2021 | After deduplicating ZZ-01 data for the 6 non-Rosenbaum custodians, identify files that require OCR and perform OCR; perform searches across ZZ-01 deduplicated and date filtered email for 6 non-Rosenbaum custodians to identify files containing (julie OR rosenbaum) and tag hits + families; evaluate file types of direct hits and exclude imaterial image and immaterial HTML email signatures/attachments; evaluate file types of families of direct hits and exclude immaterial images/company logos, immaterial embedded formatting files, immaterial HTML email signatures/attachments, etc.; export "20211227_0A-01 & ZZ-01_Discussing Rosenbaum_3621" load file (933 files; 353 MB); edit and QC load file; import data to Relativity; propagate parent email sent date to families; build dtSearch; for emails, convert date/time displayed in viewer to match metadata; within Relativity, edit search term report and add "julie" and "rosenbaum" as terms; run search term report; tag all files to Central time zone for imaging purposes; prepare and send email to Attorney Piefer confirming that additional data has been uploaded to Relativity; within Relativity, create "U_RPD" field and add tags as requested by Attorney Sally Piefer; prepare and send email to Attorney Piefer confirming field and tags have been created. | $ 795.00 |
|---|---|---|

| 03/02/2022 | Email communications with Attorney Sally Piefer @ Lindner & Marsack regarding upcoming production; identify and tag documents to be produced; create images for responsive documents; identify documents to produce as images; identify documents to be produced with non-responsive placeholder image; identify potentially privileged documents that need further review; prepare and send link to Attorney Piefer that will return the potentially privileged documents for review. | $ 510.00 |
|---|---|---|

| 03/03/2022 | Email from Attorney Sally Piefer @ Lindner & Marsack indicating that she finished reviewing the potentially privileged document set and that several of the documents should not be produced; identify and tag documents to be produced; create images for responsive documents; identify documents to produce as images; identify documents to be produced with non-responsive placeholder image; image DOC0021717 (.xlsx file) outside of Relativity and overlay images into Relativity; create production set; export Z 012910 - Z 030959 production set (8,992 documents; 5.9 GB); apply OCR to files included in production set; QC files. | $ 390.00 |
|---|---|---|
| 03/04/2022 | Continue to OCR production set; QC files; zip and upload Z 012910 - Z 030959 production set to Dropbox; generate Dropbox file transfer link for Z 012910 - Z 030959 production set; prepare and send email to Attorney Sally Piefer with the production summary and Dropbox link; send follow-up email with the file transfer password; create spreadsheet report detailing Bates numbers and applicable RPD's; prepare and send email to Attorney Piefer with the spreadsheet report attached | $ 180.00 |

| 04/04/2022 | Email from Attorney Sally Piefer requesting a saved search in Relativity that returns documents Z 018628 - Z 030959; create saved search that returns documents Z 018628 - Z 030959; email to Attorney Piefer containing a link to the saved search in Relativity; save documents Z 018628 - Z 030959 to PDF; upload "20220404_Z 018628 - Z 030959_3621.zip" to Dropbox for Attorney Piefer; prepare and send Dropbox link to Attorney Piefer for download. | $ 240.00 |
|---|---|---|

Dkt. No. 48-3 at 7-14.

### a.    Plaintiff's argument

The plaintiff argues that the proposed bill of costs fails to provide the court with "any meaningful way to verify that these costs were 'necessarily obtained' or reasonable under the circumstances." Dkt. No. 65 at 8. The plaintiff acknowledges that a $49 charge for an electronic file from Social Security was warranted, but objects to the remaining $5,855. Id. at 9.

The plaintiff asserts that several entries describe "eDiscovery-related services such as OCR functions, verifying and recovering images, performing email searches, and uploading files to Dropbox," which the plaintiff says does not provide any detail on how the costs were calculated or why these tasks were reasonably necessary to the litigation. Id. (referring to Dkt. No. 48-3 at 7-14, reproduced above). The plaintiff observes that the parties exchanged the totality of their discovery via electronic means and that the $5,855 stems largely from the volume of production—just over 18,000 documents—not from whether a curated batch of copies was reproduced for trial. Id. at 9.

### b.    Defendant's response

The defendant relies on Hecker v. Deere & Co, 556 F.3d 575, 591 (7th Cir. 2009), which it says holds that 28 U.S.C. §1920(4) broadly allows a prevailing party to recover the costs for converting computer data into a

readable format in response to discovery requests. Dkt. No. 69 at 9. The defendant contends that the costs were incurred "in its efforts to convert, duplicate, and produce documents in a readable format" in response the plaintiff's discovery requests. Id. at 9-10. The defendant elaborates that the costs for which it requests reimbursement were in direct response to the plaintiff's twenty-one requests for production of documents on November 9, 2021; the requests listed a relevant period of January 1, 2018 to May 31, 2021. Id. at 10. The defendant says that the breadth of this request forced it to hire a third-party expert. Id. (citing Wis. Res. Prot. Council v. Flambeau Mining Co., Case No. 11-cv-45, 2014 WL 3810884, at *2 (W.D. Wis. Aug. 1, 2014)).

The defendant says that it needed to use an "optical character recognition platform, such as Relativity[,]" because most of the documents responsive to the plaintiff's discovery requests were electronically stored information. Dkt. No. 69 at 10-11. The defendant asserts that the optical character recognition ("OCR") process is "fundamental to ensuring that the digital documents were readable and searchable." Id. a 11. (citing several Northern District of Illinois district court cases which awarded costs for using OCR to produce files). Finally, the defendant argues that it did not seek taxed costs for all its costs associated with e-Discovery (which totaled $17,000) but only those "incurred for creating and labeling images and preparing native files of electronic records for production in response to requests for production served by Plaintiff." Id. at 11.

c.    Application

The text of 28 U.S.C. §1920(4) allows a judge or clerk of court to tax as costs "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" "In addition to being authorized by statute, a cost must be both reasonable and necessary to the litigation for a prevailing party to recover it." Little v. Mitsubishi Motors N.A., Inc., 514 F.3d 699, 702 (7th Cir. 2008).

The plaintiff's argument that the defendant's submission is not detailed enough misses the larger mark: whether—and to what extent—the subcategory of the taxable costs associated with "copying," (28 U.S.C. §1920(4)) covers the "copying" expenses incurred when processing electronically stored discovery.

The Supreme Court recently made clear that 28 U.S.C. §1920 does not authorize reimbursement for e-discovery expenses. Rimini Street, 586 U.S. at 341.[4]  But "the circuits disagree under 28 U.S.C. §1920(4) about the outer boundary of reimbursable copying costs for electronically stored information." Sterling National Bank v. Block, 984 F.3d 1210, 1226–27 (7th Cir. 2021) (collecting cases).

Here, resolution of the parties' dispute is not as simple as relying on Hecker v. Deere & Co., 556 F.3d 575, 591 (7th Cir. 2009) (abrogated on other grounds). The Seventh Circuit's Sterling decision, issued twelve years later, in

---

[4] "Here, the Copyright Act does not explicitly authorize the award of litigation expenses beyond the six categories specified in §§ 1821 and 1920. And §§ 1821 and 1920 in turn do not authorize an award for expenses such as expert witness fees, e-discovery expenses, and jury consultant fees[.]" Id. at 341.

21

2021, commented that Hecker's conclusion ("the costs [for] for converting computer data into a readable format [in response to plaintiffs' discovery requests] are recoverable under 28 U.S.C. § 1920") was "without elaboration"; the Seventh Circuit stated that on remand, the parties should pay special attention to Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158 (3d Cir. 2012) (analyzing electronic copying). Sterling, 984 F.3d at 1227.

Given the limited guidance provided by Hecker, district courts in this circuit have taken pains to determine which electronic copying costs ought to fall within §1920(4)'s ambit and which should not. See, e.g., Split Pivot Inc. v. Trek Bicycle Corp., 154 F. Supp. 3d 769, 776-781 (W.D. Wis. 2015); Artunduaga v. Univ. of Chicago Med. Ctr., Case No. 12 C 8733, 2017 WL 1355873, at *5-*6 (N.D. Ill Apr. 13, 207); Nwoke v. Univ. of Chi. Medical Ctr., Case No. 16 C 9153, 2020 WL 7350626, at *2 (N.D. Ill. Nov. 16, 2020); and Neita v. City of Chicago, Case No. 19 C 595, 2023 WL 6809607, at *3 (N.D. Ill. Oct. 16, 2023).

The D.C. Circuit Court of Appeals appears to be the most recent federal appellate court to have addressed this issue, and its analysis is persuasive. In United States v. Halliburton Co., 954 F.3d 307, 311 (D.C. Cir. 2020), after tracing §1920(4)'s amendment in 2008 and reviewing the intervening decisions on electronic copying from other circuits, the D.C. Circuit concluded that "applying section 1920(4) calls for some common-sense judgment guided by a comparison with the paper-document analogue." Id. at 311 (quoting CBT Flint Partners, LLC v. Return Path, Inc., 737 F.3d 1320, 1330 (Fed. Cir. 2013)

(citation modified)). "Put another way, section 1920(4) authorizes taxation of costs for the digital equivalent of a law-firm associate photocopying documents to be produced to opposing counsel." Id. The Haliburton court concluded that costs incurred for converting electronic files to the production formats (in that case, PDF and TIFF) and transferring those production files to portable media (in that case, USB drives) were the only costs the prevailing party could recover under §1920(4). Haliburton denied other requested costs (such as processing documents for searches, keyword-searching and Bates stamping):

> Again, these e-discovery tasks are comparable to the steps that law-firm associates took in the pre-digital era in the course of "doc review"—identifying stacks of potentially relevant materials, culling those materials for documents containing specific keywords, screening those culled documents for potential privilege issues, Bates-stamping each screened document, and mailing discovery materials to opposing counsel. Because "[n]one of the steps that preceded [or followed] the actual act of making copies in the pre-digital era would have been considered taxable," id., such tasks are untaxable now, whether performed by law-firm associate or algorithm.

Halliburton, 954 F.3d at 312 (quoting Race Tires, 674 F.3d at 169; see also Nwoke, 2020 WL 7350626, at *2 (declining to tax electronic discovery costs because they "appear to be due to the sort of processing that makes electronic copies more useful because they can be searched or found more easily; but making the copies more useful in that way is not copying itself.")).

Many, if not all, of the defendant's submitted exemplification costs are these types of costs—costs that appear to be associated with making the electronic data more useful to the defendant (like making it searchable) rather

23

than creating a copy to be produced to the defendant. For instance, among the defendant's December 9, 2021 costs is the following:

| 12/09/2021 | Re-OCR ZZ-01 items that failed during initial OCR process; identify 0A-01 and ZZ-01 unique top level emails within 1/1/18 - 5/31/21 date range and tag families; create complete searchable index of 0A-01 and ZZ-01 emails + families within 1/1/18 - 5/31/21 date range (43.35 GB ingested volume). | $ 1,100.00 |

Dkt. No. 48-3 at 8. OCR is "'[a] technology process that translates and converts printed matter on an image into a format that a computer can manipulate . . . and, therefore, renders that matter text searchable.'" Race Tires, 674 F.3d at 162 (quoting The Sedona Conference, The Sedona Conference Glossary: E–Discovery & Digital Information Management 35 (Sherry B. Harris, *et al.* eds., 3rd ed. 2010)). This entry (as well as the entries from December 2, 2021, December 13, 2021, December 15, 2021, December 27, 2021 and March 2, 2022) appears to fall within the category of costs that Haliburton and Nwoke would exclude. This court will do the same.

Another problem—one that infects both the charges the court excluded above and the remaining charges—is that the defendant has submitted a block bill from its vendor. In other words, the invoices contain a single charge for multiple activities. For example, the following is the defendant's submission of a $1,290 cost from December 15, 2021:

| 12/15/2021 | Perform searches across 0A-01 (Rosenbaum desktop email) and ZZ-01 (Office 365 email) deduplicated and date filtered data to identify emails From/To Rosenbaum and the 6 other custodians; tag hits + families; evaluate file types of direct hits and exclude immaterial images/company logos, immaterial HTML and plain text email signatures, immaterial XML formatting files, empty/zero byte files, and immaterial font file; evaluate file types of non-direct hit family items; export "20211215_0A-01 & ZZ-01_Rosenbaum & Other Custodians Comms_3621" load file (6,597 files; 1.39 GB); create Relativity workspace and create user credentials for Attorney Sally Piefer; edit and QC load file; import data to Relativity: propagate parent email sent date to families; for emails, convert date/time displayed in viewer to match metadata; tag all files to Central time zone for imaging purposes; build dtSearch; create color and black & white imaging profiles; create search term report containing custodian email addresses and first name last name proximity searches; perform searches; create persistent highlight set. | $ 1,290.00 |

Dkt. No. 48-3 at 9. The defendant appears to seek recovery of the entire $1,290 amount, but highlights only five of the thirteen activities described as having been performed on that date. Another example is a March 3, 2022 charge for $390:

| 03/03/2022 | Email from Attorney Sally Piefer @ Lindner & Marsack indicating that she finished reviewing the potentially privileged document set and that several of the documents should not be produced; identify and tag documents to be produced; create images for responsive documents; identify documents to produce as images; identify documents to be produced with non-responsive placeholder image; image DOC0021717 (.xlsx file) outside of Relativity and overlay images into Relativity; create production set; export Z 012910 - Z 030959 production set (8,992 documents; 5.9 GB); apply OCR to files included in production set; QC files. | $ 390.00 |

Dkt. No. 48-3 at 12. Even if some of the activities included in this entry might qualify as "costs" under §1920(4), as interpreted by Haliburton, the defendant has included *all* the activities as one charge for $390. And by using highlighting, the defendant appears to concede that at least some component(s) of these charges are not allowable as costs.

Although block billing is not a "prohibited practice" in this circuit (see Farfaras v. Citizens Bank & Trust of Chi, 433 F.3d 558, 569 (7th Cir. 2006)), block billed entries still must be "sufficiently detailed to permit adequate review of the time billed to specific tasks and whether that time was reasonably necessary." Beal v. Armstrong Containers, Inc., Case No. 22-cv-378-pp, 2025

25

WL 2972423, at *6 (E.D. Wis. Oct. 21, 2025) (citation modified). Because the court cannot determine how much money the defendant spent on any particular activity, the court will not allow recovery of any costs listed in the March 3, 2022 entry. Nor will it allow recovery for any of the costs listed in the March 4, 2022 and April 4, 2022 entries; both suffer from the same block-billing practice.

Although the court understands that the defendant alleges it incurred these costs in response to the plaintiff's overly-broad discovery requests (in other words, the defendant implies that it incurred the costs unnecessarily due to the plaintiff's actions), it concludes that §1920(4) "does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional." Race Tires, 674 F.3d at 169.

> It may be that extensive "processing" of ESI is essential to make a comprehensive and intelligible production. Hard drives may need to be imaged, the imaged drives may need to be searched to identify relevant files, relevant files may need to be screened for privileged or otherwise protected information, file formats may need to be converted, and ultimately files may need to be transferred to different media for production. But that does not mean that the services leading up to the actual production constitute "making copies."

Id. The court agrees that "Congress did not authorize taxation of charges necessarily incurred to discharge discovery obligations. It allowed only for the taxation of the costs of making copies." Id.

The court will order the clerk to issue an amended bill of costs for a total of $6,503.35, the amount of the defendant's full, proposed bill of costs

($12,358.35) minus the amount the defendant requested under subcategory (2) of its exemplification costs ($5,855).

## II.    Conclusion

The court **GRANTS** the plaintiff's Motion for Review of Clerk's Taxation of Costs to the extent that the plaintiff objects to the defendant's exemplification costs under 28 U.S.C. §1920(4); the court **DENIES** the motion to the extent that the plaintiff asserts indigency as a reason to excuse the court costs altogether. Dkt. No. 64.

The court **AFFIRMS IN PART AND OVERRULES IN PART** the clerk's bill of costs. Dkt. No. 63.

The court **ORDERS** the Clerk of Court to issue an amended bill of costs in the amount of $6,503.35.

Dated in Milwaukee, Wisconsin this 23rd day of February, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

27